Lester C. Bailey and Kathryn Bailey v. Commissioner.
Bailey v. Commissioner
Docket No. 28787.
United States Tax Court
1951 Tax Ct. Memo LEXIS 203; 10 T.C.M. (CCH) 542; T.C.M. (RIA) 51170; June 11, 1951
*203 Held: Alleged debt evidenced by a note for $7,500 was, under the circumstances here present, worthless at the time of execution in 1932 and deduction for same in 1947 was correctly disallowed. Joseph S. Gill, Esq., 50 Broad St., Columbus, Ohio, for the petitioners. Elmer E. Lyon, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income tax for the years 1947 and 1948 in the respective amounts of $387.88 and $854. The sole question submitted is whether Lester C. Bailey (hereinafter sometimes called petitioner), was entitled to deduct the amount of $7,500 as a non-business bad debt in the year 1947. Respondent held that the debt became worthless prior to 1947. Findings of Fact Prior to January 29, 1932, petitioner advanced money to one Barendt in the sum of $6,000. Previous to that date both had been engaged in the real estate business. Barendt also owed petitioner the sum of $1,500 on account of certain commissions. On January 29, 1932, Barendt executed and gave petitioner a promissory note for $7,500, payable six months after date. The consideration for this note was the *204 $6,000 previously advanced and the $1,500 in commissions owed by Barendt. On the above-mentioned date Barendt was under indictment for having obtained money under false pretenses and had been arraigned on such charge. He was subsequently convicted and sent to the Ohio Penitentiary for a term of from one to three years. At the time he executed the note Barendt referred to his indictment and to his probable inability to repay the money in the immediate future. He was released from the Ohio State Penitentiary in 1935 and subsequently re-entered the real estate business. At the time the money was advanced and at the time the note was given, as well as subsequent to Barendt's release, petitioner and Barendt met socially several times a month. Subsequent to his release from the penitentiary in 1935, Barendt, at various times, acknowledged the existence of the debt and promised to repay the money when he could spare it from his business ventures. In 1941 petitioner moved from Toledo, Ohio, to Columbus, Ohio, and saw Barendt less frequently thereafter. In 1945 Barendt was married to a widow lady who possessed some property. During that year he visited petitioner in Columbus and again *205 promised to repay the money. In 1946 petitioner asked Barendt to find a purchaser for a house owned by petitioner's sister. Barendt was given authority to sell the house and collect the money from the purchaser. In April, 1947, petitioner learned that Barendt was again in trouble and that he had converted to his own use the proceeds of the sale of petitioner's sister's house. In May, 1947, petitioner was advised by an attorney that Barendt was probably "execution-proof." In 1947 Barendt was again indicted, tried and found guilty of embezzlement. Among those from whom he had embezzled funds was petitioner's sister. He was sentenced to a term of from 2 to 20 years in the Ohio State Penitentiary and was still incarcerated therein at the time of the hearing. Opinion VAN FOSSAN, Judge: On consideration of the whole record, we are convinced that the debt for which the note was given in 1932, after Barendt had been indicted and was awaiting trial on a charge of obtaining money under false pretenses, was entirely worthless. Petitioner knew Barendt well and had been associated with him in some business matters. According to petitioner, Barendt executed a note as an acknowledgment of the *206 pre-existing debt and said he would pay it "when he got out of the penitentiary * * * and got re-established." This time never came. There is no evidence that Barendt had any property of value at the time the note was executed. Barendt was sentenced to the penitentiary for a period of from one to three years and was there incarcerated from November 7, 1932, to November 6, 1935. On release he again entered the real estate field and was variously engaged therein until November 28, 1947. At this date, having failed to profit by his previous experience, he began serving a second term in the Ohio Penitentiary, having been convicted on a charge of embezzlement and sentenced to a term of from 2 to 20 years. He showed no discrimination in choosing his victims. Among those from whom he embezzled funds was petitioner's sister. Barendt's assurances to petitioner at various times between 1945 and 1947 that he would some day pay petitioner's debt mean nothing in the circumstances here present. The fact that petitioner "presumed" he had some property adds nothing. Every reasonable inference from the record of petitioner's experience with Barendt is that Barendt was at all times "judgment-proof. *207 " He was not merely a bad financial risk, he was a bad moral risk. A debt derives its value from the integrity, character, and financial responsibility of the maker. Here the debt had no such background. The note was worthless when given and never rose above that characterization. Since the debt was worthless at January 1, 1947 (the beginning of the taxable year), respondent correctly disallowed the deduction claimed. Decision will be entered for the respondent.